MIGUEL CIRILO BATALLA, Petitioner, *v.* DISTRICT COURT OF SAN JUAN, Respondent; THE PEOPLE OF PUERTO RICO, Intervener.

No. 1859. Argued December 3, 1952.—Decided January 21, 1953.

*Gaspar Gerena Bras* for petitioner. *J. Trías Monge, Secretary of Justice, (Vicente Géigel Polanco, Former Attorney General,* on the brief), *J. Rivera Barreras, Fiscal of the Supreme Court* and *Rafael Ydrach Yordán, Assistant Fiscal,* for intervener.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

This case has its roots in acts of abominable criminality which an offended society must repudiate with a righteous spirit of collective indignation. However, the case herein involves the alleged violation of fundamental rights of man in the basic guarantees established by laws which recognize those rights and under whose protection rests the incomparable magnificence of democracy in the free nations of the world. In order to pass on the merits of this case, with the scrupulous thoroughness that the questions involved herein require, we must first give an adequate background of the facts.

Against Lucas E. Castro Anguita, Miguel Angel Palóu Márquez and Miguel Cirilo Batalla Suere—petitioners herein—eight informations for an equal number of first degree murders were filed, alleging therein that said defendants on the night of the 14th to the 15th of December 1949, in San Juan, "illegally, willfully, and criminally, with mal-

ice aforethought and deliberation, and with a firm and determined intent and purpose to kill, showing that they had abandoned and malignant hearts, the three defendants acting by virtue of a common agreement among themselves, illegally killed [name of each victim: Adela Margarita Maurent Almodóvar, Antonio Rosa Requena, Francisco Rosa Sánchez, Rosa Julia Maurent de Sandín, Josefa Almodóvar Vázquez, Jorge Sandín López, Noemi Franceschi Rivera and Betty Santiago] in the perpetration by the defendants of arson in the first degree, in the inhabited three-story building, at that time No. 300, formerly 51 Allen Street, San Juan, Puerto Rico, owned by Benigno Luiña and Pérez Villamil, then and there occupied by human beings on two of its floors and on the other by Almacenes Palóu of the firm Miguel A. Palóu & Co., S. en C., the said fire having been conceived and planned by the three defendants among themselves."

Two informations for the offense of attempt to kill in the persons of América López de Rosa and Francisco Casanova Rivera were also filed against them on the same facts.

After several preliminary motions, on March 22, 1950 Batalla filed in the lower court a motion among other things, to set aside the informations, alleging the existence of an immunity contract between him and the People of Puerto Rico, by virtue of facts which insofar as pertinent, he set forth as follows:

"That on December 18, 1949, defendant Miguel Cirilo Batalla was arrested in Sabana Grande by several policemen who did not inform him the reason for his arrest nor under whose authority or official order he was being arrested. He was taken to Police Headquarters at Sabana Grande where he was submitted to interrogatories, privations and tortures. In Sabana Grande he was taken before no magistrate. Then he was transferred to the city of Mayagüez where he was not taken before any magistrate either to substantiate his arrest. From Mayagüez he was taken to San Juan before the Hon. District Attorney Angel Viera Martínez and others.

"The defendant suffered from injuries and burns in various parts of his body which produced him acute pain and physical and moral discomfort. He was taken to testify before the district attorney and was submitted to an examination, no warnings at all having been given to him. He was compelled to run around the room and assume different positions in order that several witnesses could identify him. Later, he was compelled to undergo a physical examination by several doctors who were summoned by the district attorneys in order to obtain diagnosis of his burns. Because defendant in his first testimony did not testify to the convenience of the district attorneys for fear that he might incriminate himself and because he was denied his right to consult lawyers, friends and relatives and because he was held incommunicated and surrounded by policemen, detectives and other unknown and hostile officers, he was insulted and abused with vile and offensive language.

"Then he was taken to a dark room where several policemen and detectives commenced to coerce the defendant. Promises were made in the name of the district attorneys so that he would become a witness for the People of Puerto Rico. Moral coercion was exercised. A detective told him that a high officer of the Insular Police whom he could trust, was going to talk to him. The Aide of the Colonel of the Insular Police came and he read to defendant the provisions of law referring to the duty of every witness to testify before a district attorney in order to be entitled to exoneration from all offenses. This gentleman told him: 'Look straight to my face. When a person like me occupies in Puerto Rico a position of honor and high responsibility as I do, it is because he is considered a person of integrity, capacity and personal merits which are beyond any extraneous influences. I am a gentleman. Tell the truth to the district attorney so that he will make you a witness for the People of Puerto Rico.' That then another detective came and told him: 'Look Batalla, here is a prosecuting attorney who is a member of the Free Masons of Puerto Rico. You may trust him. Testify before him.' That by that time he was convinced and trusting the good faith of everything that had been said to him, he sent for district attorney Freyre to whom the detective referred as a free masonic district attorney. That when the detective came to the room where the district attorneys were and told them of defendant's intention to compromise with district attorney Freyre, the Hon. District Attorney

Angel Viera Martínez stepped forward and told the defendant: 'Help me.' And with visible emotion in his eyes told him: 'I promise you that you will not go to the court as a defendant.'

"That this moved the defendant, and he then agreed to testify before the Hon. District Attorney Viera Martínez. That he testified before him, in a private room used for the development of films. The district attorney, his stenographer and defendant were the only ones present. No verbal warnings of any kind were made to him. (If any warning might appear from said testimony, it was done in the ordinary and common way which is customary with the stenographers of the district attorney's office without the defendant knowing or understanding about it.) Thus he gave before the district attorney his second testimony in which he connected the codefendant Miguel Angel Palóu. That then exclamations of joy were heard at Headquarters and the Press was admitted to the room to take pictures. Codefendant Palóu was brought face to face with the defendant. The defendant was given facilities for his personal cleanliness and medical assistance which had been formerly refused. All this after more than thirty (30) hours of torture and physical and moral exhaustion.

"Then the defendant was taken to the Municipal Hospital where he remained. One or two days later district attorney Angel Viera Martínez visited him and after ratifying him the promise of immunity and defendant having agreed to elaborate his former testimony, he again testified before the district attorney. In this third testimony he connects the other codefendant Lucas Castro Anguita with the crime. In this last confession the district attorney appears warning defendant and the latter accepting liabilities and punishments, but none of this was construed by the parties as a waiver of defendant's right of immunity wherefore instructions of a private character and others prevailed which the defendant understood to mean that in order to win public opinion, his testimony should reflect, as spontaneous and voluntary, repentance for the damage caused to the community, which defendant actually felt and wanted to repair by serving justice. That such admissions obeyed to an emotional condition of reparation, as well as to the fact that he was not assisted by counsel nor advised as to his rights and responsibilities and also because he believed in good faith that the prosecuting attorney would fulfill his promise and because he understood that the condition of gentleman of the district

attorney would stand above all formalities inasmuch as the district attorney personally assured him that he as well as the People of Puerto Rico was morally and legally bound to him for the cooperation that he was giving to Justice in Puerto Rico.

"That later he was taken to the Insular Penitentiary with special instructions of district attorney Viera Martínez. In this institution he has been treated with the utmost decency and courtesy, a fact which defendant admits with an open spirit of justice. However, by instructions of the district attorney, the Hon. Angel Viera Martínez, he was not allowed to speak with his foster sister Mrs. Paulina Díaz, nor with his blood sister who came from New York to visit him, Mrs. Juliana Batalla, but was kept under strict custody and forbidden to speak a single word in connection with his case, all of which is contrary to the law. That when the district attorney visited him in the penitentiary he again ratified to defendant his promise of immunity.

"That when defendant's blood sister became aware that the former was being submitted to restrictions and cunning deceits under the guise of usefulness, she decided to contract a lawyer to assist her brother. Which she did. That later defendant found out that district attorney Angel Viera Martínez had stated to the press that he was not going to use defendant as a witness for the People of Puerto Rico so as not to exonerate him, which statement was and has been a surprise to defendant. However, the Hon. District Attorney Angel Viera Martínez used and introduced in evidence before the Hon. District Court of San Juan, defendant's testimony in the cases of *habeas corpus* filed before this Court by codefendants Lucas Castro Anguita and Miguel Angel Palóu, for the purpose of showing a probable cause against them, and in both cases said testimony was accepted by the Hon. Court all of which constitutes not only a ratification of the immunity contract by this Hon. Court but also implies of itself, and pursuant to §§ 239 and 241 of the Code of Criminal Procedure of Puerto Rico the scope of which has been enlarged by Act No. 13 of April 9, 1941, an exoneration of the offenses charged against defendant inasmuch as it is tantamount to having called him to testify against his codefendants in a proceeding within the administration of criminal law in Puerto Rico.

"That the restrictions suffered by defendant, who is a citizen of Cuba, after having furnished a bail bond which is excessive

and unlawful if it is regarded as a bond to guarantee his appearance either as defendant or as witness, being insolvent as he actually is, and father of two minor children living in Havana, Cuba, without friends, relatives or acquaintances in Puerto Rico; in having denied defendant the equal protection of the law, substantive as well as adjective and constitutional; in denying him his vested right by reason of his nationality and by reason of the immunity contract executed with the People of Puerto Rico, constitute, each and everyone, a flagrant violation of the guaranties which flow from Private International Law and from Public International Law contained in Treatises, Conferences, Agreements and International Conventions signed by the Republic of Cuba and the Government of the United States."

The grounds for his motion were as follows:

"Because defendant was compelled to appear and testify before the district attorney by means of illegal arrest and to testify against himself in violation of the Fifth Amendment of the Constitution of the United States and of § 2 of the Organic Act of Puerto Rico and of Act No. 13 of April 9, 1941 which provides: 'No person shall be prosecuted, punished, or have his property confiscated for testifying or for offering any kind of evidence in a criminal proceeding, process, or investigation, and such immunity shall cover the declarant not only concerning the testimony given by him in regard to the crime being investigated, but also concerning any liability he may have incurred in regard to other crimes; . . .'

"That there was a physical and moral compulsion to obtain an alleged confession from defendant by dint of promise of the district attorney and of agents in his name and representation, to grant an absolute exoneration of the offenses ·if defendant confessed and produced evidence which would connect the co-defendants Miguel Palóu Márquez and Lucas Castro Anguita, which promise was believed in good faith by the defendant and he likewise testified in good faith and has been willing to serve as witness for the People of Puerto Rico in fulfilment of his agreement and that the non-fulfilment of the district attorney's promise, by prosecuting the defendant, constitutes a violation of the contract made by the former who pledged the good faith and credit of the People of Puerto Rico.

"That the promise of the district attorney to the defendant by which the former obtained the confession and the necessary evidence to prosecute codefendants Miguel Palóu and Lucas Castro, has been ratified by this Court in admitting in evidence defendant's testimony offered by the district attorney in the habeas corpus proceedings filed by the codefendants Palóu and Castro before this Hon. Court and under the numbers [in blank], this proceeding constituting *per se* an exoneration of the offenses charged against defendant within the spirit of §§ 239 and 241 of the Code of Criminal Procedure the scope of which has been enlarged by Act No. 13 of April 9, 1941, according to a judgment of the Supreme Court of Puerto Rico in *People* v. *Quiñones,* 69 P.R.R. 682, which expressly authorizes the district court to grant immunity to a person who testifies or produces evidence of any kind in a proceeding, process or criminal investigation, being the alleged warnings of the district attorney in said testimony as well as the admissions of defendant in connection with his acceptance of punishment, a mere formality in the agreement between the district attorney and the defendant inasmuch as the promises, statements, representations and conduct of the district attorney were due to his interest and determination to prosecute and connect codefendants Palóu and Castro with the commission of the crimes.

"Because defendant Miguel Cirilo Batalla, citizen of Cuba, transient in Puerto Rico and not domiciled in this country, was deprived of the constitutional and statutory right of being assisted by counsel during all the process of investigation in violation of the provisions of §§ 44, 11 and 141 of the Code of Criminal Procedure of Puerto Rico and of § 2, paragraph 2 of our Organic Act and the doctrine laid down in the cases of *Wood* v. *U. S.,* 128 F. 2d 265, 270; *Powell* v. *Alabama,* 287 U. S. 45; *Johnson* v. *Zerbst,* 304 U. S. 458; *People* v. *Napthaly,* 105 Cal. 641, and in violation of the internationalization of the constitutional guaranties which protect aliens rights and prevail as a positive rule of international law. (*D.I.P. de* V. N. Romero del Prado.)

"Because the Government has no probable cause against the defendant once all the evidence produced by the latter since his arrest in Sabana Grande is suppressed, which suppression is requested herein inasmuch as it was unlawfully obtained and inasmuch as the district attorney acted in his dual capacity of district attorney and magistrate by virtue of legal precepts

which are unconstitutional since they constitute an encroachment of the executive branch in the judiciary."

On March 27, 1950, date set for arraignment, the court ordered—inasmuch as Batalla did not appear—that a plea of not guilty and a petition for trial by jury be entered in his favor and on April 18 it overruled the motion to dismiss filed by said defendant on March 22, in the language which appears from the incident which we quote as follows:

"HON. JUDGE: The court is going to decide. The motion for a change of venue filed on March 22, 1950 is overruled because the statute on which the motion is based is Act No. 13 of 1941, which is inapposite *inasmuch as said statute applies solely to the witnesses and not to defendants who confess*, and in the second place because all the questions raised as to defendant's confession *are questions which may and should be raised at the trial*. If the confession was obtained through deceit or inducement then *the admission of said confession may be attacked* by the means granted by law and the jurisprudence, and the court shall decide this point *when it is raised at the trial*. We believe, without deciding, *that no pleas in the bar may be made in Puerto Rico*. Here, the court can not decide anything *on the facts of the case* before it is submitted to a jury or to the court. The court believes so but does not decide it because it does not deem it necessary to do so *inasmuch as it is already decided and because said questions may be raised at the trial*. The reason for the court to so conclude is obvious. If it would have to decide now, by way of evidence presented by both parties, that Miguel Cirilo Batalla, upon confessing to the District Attorney, did so voluntarily and without mediating any promises, then I would be deciding that he is guilty of the offense charged because in his motion he admits to have made said confession and that he confessed the commission of an offense *and that he did so on the promise of exoneration*. In deciding that he did not do so by promise I would be deciding on his guilt and this is not contemplated by the Code of Criminal Procedure of Puerto Rico nor by the Organic Act nor by the procedure in the United States. Otherwise, *if I would be deciding that the district attorney promised him immunity I would have to acquit the defendant.* That is not contemplated by our criminal procedure either. Without deciding, I believe

that this is one of the reasons why there are no such pre-trial questions of fact in Puerto Rico. *It is the jury on its day who must decide whether the confession was obtained through deceit or promise, whether it was not fulfilled, and the court shall decide whether or not it is admissible.* ...

"Hon. Judge: What do you plead?

"Mr. Gerena Bras: We want Your Honor to answer a question first. Does Your Honor overrule the motion for a continuance of the proceedings? We would like to know whether Your Honor believes that the question of immunity which we have raised should be raised at the trial or prior thereto?

"Hon. Judge: The question of immunity can be raised nowhere, neither at the court, nor before the jury, nor before the Federal Court *because there is no statute sanctioning immunity.* What the defendant may adduce is that since he says that said confession was obtained through a false promise, *when the District Attorney presents it, the defendant may object to it and the court shall decide according to the rulings of the Supreme Court whether or not it is voluntary. As to whether or not the District Attorney offered immunity,* my opinion is that it can not be raised because it would be an illegal contract.

"Mr. Gerena Bras: *We want to know and be sure that before the trial defendant herein will not be allowed to introduce evidence in support of the existence of the immunity contract.*

"Hon. Judge: *Not before the trial. At the trial if it is intended to attack the confession.*

"Mr. Gerena: We take an exception to the decision of the Hon. Court because we believe that the question of immunity is necessarily a pre-trial question and one which the court should know and decide in consonance with the evidence introduced before the judge. Let it be understood that the defendant in nowise waives his right to raise this question before the trial. If after all that, Your Honor wants to enter a plea of not guilty and set the case for trial we can not prevent it." (Italics ours.)

On May 1 the defendant filed the following motion, common to all the causes instituted against him:

"WHEREAS this Hon. Court decided on April 18, 1950 and in the above-entitled cases, that Act No. 13 of April 19, 1941 is not applicable because that statute applies solely to the wit-

nesses and not to the defendants who confess'; that here in Puerto Rico no pleas in the bar may be presented; that 'the immunity question can be raised nowhere, neither at the court, nor before the jury, nor before the Federal Court because there is no statute sanctioning immunity; that what the defendant may adduce is that since he says that said confession was obtained through a false promise, when the district attorney presents it, the defendant may object to it and the court shall decide according to the rulings of the Supreme Court whether or not it is voluntary; that as to whether or not the district attorney offered immunity, the opinion of the court is that it can not be raised because it would be an illegal contract; that the only evidence which the court would allow defendant to introduce in support of the existence of the immunity contract will be at the trial and then, only to attack the admissibility in evidence of defendant's confession.'

"WHEREAS this Hon. Court has judicial notice that the testimony of defendant Miguel Cirilo Batalla was used in the proceeding of *habeas corpus* filed before this Hon. Court by codefendant Lucas Castro Anguita and that in said proceeding the counsel for defendant Lucas Castro Anguita objected to its admission and requested to no avail that defendant Miguel Cirilo Batalla be brought personally to be cross-examined and the Hon. Court denied the request and that likewise defendant's testimony was used in the *habeas corpus* presented by his other codefendant Miguel Angel Palóu before this same court and notwithstanding the judicial notice that this Hon. Court has of these proceedings it has refused and refuses to exonerate him from the informations filed in the above-entitled cases pursuant to the construction which ought to be given to Act No. 13 of April 19, 1941. The Fifth Amendment of the Constitution of the United States of America and § 2 of the Organic Act of Puerto Rico;

"WHEREAS defendant has also been precluded from introducing pre-trial evidence on the fact that after he gave his second testimony before the Hon. District Attorney Viera Martínez, defendant's testimony was personally used in a 'FACE TO FACE' proceeding with codefendant Miguel Angel Palóu where the district attorneys were arbitrating as Committing Magistrates for the purpose of obtaining evidence against codefendant Miguel Angel Palóu, all of which was taken in a stenographic record becoming of public knowledge through the insular Press, and

constituting a 'proceeding' within the scope of Act No. 13 of April 19, 1941.

"WHEREAS the defense of immunity is one which presupposes the admission by defendant of the crimes denounced and the admission or inadmission of defendant's confession in evidence does not affect the dismissal of the information inasmuch as he is exposed to be convicted on other evidence obtained from the information given in his confession, and from the many gaps and channels which this sort of evidence, thus obtained and produced by the defendant, leaves open for the investigators, and whereas the defendant at no time has repudiated or denied the truth of the facts in connection with his participation in the commission of the crimes charged in the informations but has merely limited himself to exercise a right which the law and jurisprudence recognize in him in order to obtain exoneration from the offenses;

"WHEREAS the juridical view of this Hon. Court is contrary to the liberal construction given in federal and state jurisdictions of the United States, to statutes equal or similar to the statute of immunity of Puerto Rico;

"THEREFORE, defendant admits the facts alleged in all the informations and voluntarily requests to be declared guilty of the crime set forth therein, *inasmuch as it is his intention to appeal to the Hon. Supreme Court of Puerto Rico.*" (Italics ours.)

On May 9—eight days after the court had declared him guilty on all counts by virtue of said motion, but before being sentenced—Batalla requested that he be allowed to withdraw his plea of guilty alleging, insofar as pertinent, the following:

"1. That on May 1 and on the grounds set forth in the motion filed on said date, defendant admitted the facts alleged in the informations because he wanted to appeal to the Hon. Supreme Court of Puerto Rico on the theory that he should be exonerated from the offenses on the allegations contained in his motion argued and decided on April 18, 1950, without allowing defendant to produce evidence in support thereof. 2. That notwithstanding that defendant's plea was called a plea of guilty *as a matter of law his plea is not guilty* although as a matter of fact defendant admitted *that the facts alleged in the infor-*

*mations* were true since as it is explained in said motion *the defense of immunity presupposes the admission by defendant of the offenses denounced.* 3. That from the motion presented on May 1 as well as from the discussion thereof it clearly appears that defendant's intention was to appeal to the Supreme Court of Puerto Rico from the decision of the Hon. Judge rendered on April 18, 1950 dismissing the same without allowing the defendant to introduce evidence in support of the allegations. 4. That defendant as well as his counsel and the Hon. Judge and prosecuting district attorneys Freyre and Viera Martínez were surprised by the approval of Act No. 128 of April 26, 1950 which precludes defendant herein from taking an appeal to substantiate the allegations that this Hon. Court dismissed on April 18, 1950. 5. The obvious purpose of defendant in pleading guilty was to appeal to the Supreme Court and this was known both to the Hon. Court and to the district attorneys because the undersigned attorney so stated at the time the plea was made, and defendant as well as his counsel are surprised by the approval of the aforesaid Act No. 128, of which we had no knowledge until May 2, 1950, all of which we communicated to the Hon. Judge and to District Attorney Mr. Viera for the purpose of informing them that the unexpected approval of the Act substantially affected defendant's right and that if he would have had previous knowledge thereof *defendant would have entered a plea of not guilty in order to appeal.* 6. That the plea of guilty made by the defendant is null and void inasmuch as he did so *having in mind his right to appeal and he was informed by this attorney that we would have the right to appeal* inasmuch as we were unaware that Act No. 128 had been approved, because the Press made no comment on said Act until May 2, and it would be unfair that the principle of constructive notice be applied herein, because as a matter of fact defendant did not know that in such a recent date an Act which prejudiced his substantial rights had been approved. 7. That the plea of guilty is also void on the grounds set forth in the affidavit of merits which shall be attached to this motion. 8. That if this Hon. Court does not exercise sound discretion in allowing the plea of guilty to be withdrawn and substituted for a plea of not guilty, defendant's substantial rights to have his day in court pursuant to the due process of law would be violated.—By virtue of which it is requested from the Hon. Court that defendant be allowed to withdraw his plea of guilty

and substitute it for that of not guilty of the offenses charged and presently offers to prove all the facts alleged in this motion and those stated in his Affidavit of Merits." (Italics ours.)

The aforesaid petition was denied and on June 8 next the defendant was sentenced to life imprisonment for each of the first degree murders and from one to ten years' imprisonment for attempt to kill, all the sentences to be served concurrently.

Petitioner then appealed to this Court by way of certiorari, alleging that the trial judge committed error in holding (1) That Act No. 13 of April 19, 1941 (Sess. Laws, p. 346) is not applicable to him because it only protects witnesses and not defendants; (2) That in Puerto Rico there are no pleas in bar; (3, 5) That the immunity question can not be raised before a jury nor before the court because there is no statute which sanctions immunity and that if the district attorney offered immunity this was an unlawful contract; (4, 6) That the only matter which defendant could have raised and the only evidence which he could have been allowed to introduce in support of the defense of immunity was the involuntary character of the confession, in order to attack its admissibility in evidence; (7) That there was no implied obligation on the part of the People to exonerate defendant because the district attorney used his written testimony as proof to show cause in the habeas corpus proceeding filed by codefendants Lucas Castro Anguita and Miguel Angel Palóu; (8) In not permitting the introduction of evidence which would show that defendant was personally used in a proceeding of "confronting" him with codefendant Palóu of which a stenographic record was made, it being therefore a "proceeding" within the scope of Act No. 13 of April 19, 1941; (9) In overruling his motion to withdraw the plea of guilty knowing that there was inadvertence and a misconception of the law at the time of the confession; (10) In not exonerating him when he was compelled to testify as a witness for the People at the trial

against Palóu in which his testimony helped in convicting the latter; (11) In declaring him guilty and sentencing him in each one of the informations without determining the degree of the crime as required by § 310 of the Code of Criminal Procedure, and being aware that "the murders and the attempts to kill were committed within the commission of a crime other than the one alleged in the informations."

In view of the importance of the questions involved we issued the writ of certiorari. We shall now turn to consider them.

I

*Privileges Against Self Incrimination*

Paragraph 3 of § 2 of the Act of Congress of March 2, 1917—Organic Act of Puerto Rico—which was in force until July 25, 1952, when the Constitution of the Commonwealth of Puerto Rico became in force, provided that: "No person . . . shall be compelled in any criminal case to be a witness against himself." Said provision is identical with the one contained in the Fifth Amendment of the Constitution of the United States of America,[1] which establishes the privilege against self incrimination.[2]

The privilege contained in the aforesaid Fifth Amendment—which does not cover the states and is not included in the due process clause of the Fourteenth Amendment, *Adamson* v. *California*, 332 U. S. 46, 91 L. ed. 1903; *Palko* v. *Connecticut*, 302 U. S. 319; *Twining* v. *New Jersey*, 211 U. S. 78, 53 L. ed. 97, being for the protection of the in-

---

[1] Said Fifth Amendment, insofar as pertinent provides: "That no person . . . shall be compelled in any criminal case to be a witness against himself."

The Constitutions of all the States of the Union with the exception of Iowa and New Jersey contain similar provisions. In these two states, however, the privilege against self incrimination has been recognized as part of the common law of the state. *State* v. *Height*, 117 Iowa 650, 91 N. W. 935; *State* v. *Zdanowicz*, 69 N.J.L. 620, 55 Atl. 743.

[2] In the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico—paragraph 3, § 11, Art. II—said privilege is stated as follows: "No person shall be compelled in any criminal case to be a witness against himself. . . ."

dividual against the federal government only, *United States v. Murdock*, 284 U. S. 141, 76 L. ed. 210; *Brown v. Walker*, 161 U. S. 591, 40 L. ed. 819; 41 Yale L. J. 161; 45 Harv. L. Rev. 595—protects the accused in criminal cases from being compelled to be a witness, as well as witnesses from being compelled to answer any question which might tend to incriminate them. *Counselman v. Hitchcock*,[3] 142 U. S. 547, 562, 35 L. ed. 1110; Wigmore *on Evidence*, 3d ed, § 2252(a).

In *Counselman v. Hitchcock, supra*, the National Supreme Court in determining the scope of the Fifth Amendment in connection with the self incrimination clause stated: "It is imposible that the meaning of the constitutional provision can only be, that a person shall not be compelled to be a witness against himself in a criminal prosecution against himself. It would doubtless cover such cases; but it is not limited to them. The object was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime. The privilege is limited to criminal matters, but it is as broad as the mischief against which it seeks to guard."

On that same particular it cited with approval the following words of Chief Justice Marshall—while acting as judge in the Circuit Court for the District of Virginia—in *Burr's Trial* (1 Burr's Trial 244, 1807), in answer to the argument that a witness can never refuse to answer any question, unless that answer, unconnected with other testimony, would be sufficient to convict him of crime: "This would be rendering the rule almost perfectly worthless. Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself.

---

[3] An investigation before the federal grand jury was considered as a criminal "case."

.It is certainly not only a possible, but a probable case, that a witness, by disclosing a single fact, may complete the testimony against himself; and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing, but all other facts without it would be insufficient. While that remains concealed within his own bosom, he is safe; but draw it from thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself, would most obviously be infringed, by compelling a witness to disclose a fact of this description."

■ The privilege against self incrimination not only includes evidence which reveals the elements of the crime but also that evidence which assists the state in obtaining other proof of crime. *Blau* v. *United States*, 340 U. S. 159, 95 L. ed. 170; *Rogers* v. *United States*, 340 U. S. 367, 95 L. ed. 344; *Hoffman* v. *United States*, 341 U. S. 479, 95 L. ed. 1118; 50 Mich. L. Rev. 605; 49 Mich. L. Rev. 1228.

■ And if the extrajudicial confession of a defendant is obtained, through coercion, threats, or promises of immunity, said confession as well as any other evidence discovered or obtained by the prosecuting officer as a result of the gaps opened by said confession, is inadmissible in a prosecution against said defendant. If admitted, a conviction based upon evidence of such nature shall not prevail.[4]

---

[4] See *Stroble* v. *California*, 343 U. S. 181, 96 L. ed. 529, wherein, citing the cases of *Malinski* v. *New York*, 324 U. S. 401, 89 L. ed. 1029 and *Lyons* v. *Oklahoma*, 322 U. S. 596, 597, footnote 1, 88 L. ed. 1481, in which the Supreme Court considered that should a confession made by a defendant to a District Attorney of the country of the state of California, on the commission of a first degree murder, have been involuntary— it held that it was not—said confession being admitted as it was at the trial, defendant's conviction could not have been upheld, "even though evidence apart from this confession might have sufficed to justify the jury's verdict."

For a study of the scope of confessions and. their admissibility in evidence, as well as their connection with the Fifth Amendment—and the Fourteenth Amendment in case of state courts—see also: *Hopt* v. *Utah*,

■ Said privilege, however, may be waived, inasmuch as the text of the Fifth Amendment in the sense that no person shall be "compelled," does not preclude a witness from voluntarily testifying on a matter which might incriminate him. If a witness desires the protection of the privilege against self-incrimination he is required to claim it, contrariwise he shall not be considered as being "compelled" within the meaning of the Amendment. *Vajtauer* v. *Comm'r of Immigration*, 273 U. S. 103, 71 L. ed. 560; *United States* v. *Monia*, 317 U. S. 424, 87 L. ed. 376; Wigmore, *op. cit.*, § 2276(*b*)(1). See also, *The Privilege Against Self-Incrimination: The Doctrine of Waiver*, 65 Yale Law Journal 105; Corwin, *The Supreme Court's Construction of the Self-Incrimination Clause*, 29 Mich. L. Rev. 1. If a defendant takes the stand, in his own defense or in defense of a co-defendant, he thereby waives said privilege. Wigmore, *op. cit.*, § 2276(*b*)(2). If he makes an extrajudicial confession voluntarily, it is admissible in evidence in the prosecution against him because in so doing he waived said privilege.[5]

---

110 U. S. 574, 28 L. ed. 262; *Sparf and Hansen* v. *United States*, 156 U. S. 51, 39 L. ed. 343; *Bram* v. *United States*, 168 U. S. 532, 42 L. ed. 568; *Wan* v. *United States*, 266 U. S. 1, 69 L. ed. 131; *Brown* v. *Mississippi*, 297 U. S. 278, 80 L. ed. 682; *McNabb* v. *United States*, 318 U. S. 332, 87 L. ed. 819; *United States* v. *Mitchell*, 322 U. S. 65, 88 L. ed. 1140; *Haley* v. *Ohio*, 332 U. S. 596, 92 L. ed. 224; *Upshaw* v. *United States*, 335 U. S. 410, 93 L. ed. 100; *Watts* v. *Indiana*, 338 U. S. 49, 93 L. ed. 1801; *Turner* v. *Pennsylvania*, 338 U. S. 62, 93 L. ed. 1810; *Harris* v. *South Carolina*, 338 U. S. 62, 93 L. ed. 1815; 18 L.R.A. (N. S.) 796; 50 L.R.A. (N. S.) 1084; 28 L. ed. 262; 42 L. ed. 568; 69 L. ed. 131; 93 L. ed. 115; 79 A.L.R. 457; 24 A.L.R. 703; 23 A.L.R. 1383; 43 Ill. L. Rev. 442; 42 Mich. L. Rev. 679; 56 Harv. L. Rev. 1008; 47 Cal. L. Rev. 1214.

[5] The rule in this jurisdiction is that in order for an extrajudicial confession to be admissible in evidence, its voluntary character, free of coercion or promise, must be proved. *People* v. *Medina*, 72 P.R.R. 241; *People* v. *Rivera*, 71 P.R.R. 115; *People* v. *Díaz*, 65 P.R.R. 416; *People* v. *Declet*, 65 P.R.R. 22; *People* v. *Montes*, 64 P.R.R. 306; *People* v. *Lebrón*, 61 P.R.R. 665; *People* v. *Kent*, 10 P.R.R. 325; *People* v. *Rivera, alias Panchito*, 7 P.R.R. 325. In view of the development of the proceedings in the court *a quo*, it is evident that neither the character nor the admissibility *in evidence* of petitioner's confession is in issue, nor the effects of its admission on defendant's conviction.

When the witness himself elects to waive his privilege, —which is to protect himself and no one else—and discloses his criminal connections, he is not permitted to stop, but must go on and make a full disclosure. If a prosecution for a crime is barred by the statute of limitations, the witness is compellable to answer any question although it may incriminate him, should the offense not be barred. Likewise, if the witness has already received pardon from the executive, he can no longer set up his privilege, since he stands with respect to such offense as if it had never been committed. *Brown* v. *Walker*, *supra*, and cases cited therein.

## II

### *Purpose and Scope of the Statutes Granting Immunity*

On the other hand, the state may remove the privilege against self-incrimination by the approval of statutes which grant immunity from the consequences of giving incriminating testimony when the immunity granted by said statutes is coextensive with the constitutional privilege which is removed. *Counselman* v. *Hitchcock*, *supra*, *Brown* v. *Walker*, *supra*; *Heike* v. *United States*, 227 U. S. 131, 57 L. ed. 450; *United States* v. *Monia*, *supra*.

In the administration of criminal law many times public authorities require evidence which will not be divulged precisely because of said privilege of protection from self incrimination. To make such evidence available and compulsory, statutes are passed creating absolute immunity from prosecution as an adequate equivalent for the constitutional privilege. Freedom from prosecution is granted in exchange for evidence not otherwise procurable. In that way privilege from self incrimination is replaced by immunity from prosecution.

"A statute creating immunity is not a gratuity for crime; it does not display magnanimity to criminals by affording them amnesty; it is not designed to wipe out criminal offenses nor to be used as a trap by the government.

Its sole purpose is to facilitate the administration of the criminal law by making available vital evidence." Dangel, *Criminal Law*, (1951) p. 192.

The constitutional protection from self incrimination and the immunity given by statute are correlated. The statute affords immunity only to the extent that the constitution grants the privilege. "The immunity is no broader than the compulsion; it is a mere substitute for the constitutional safeguard and is coterminous with it. To create immunity, testimony must be such that the witness can legally refuse to give it, because of the constitutional protection. The statute forces the testimony and only to that extent the immunity exists." *Brown* v. *Walker, supra; Heike* v. *United States, supra;* Dangel, *op.* and p. cit. See also the following annotations on the scope of the statutes granting immunity: 154 A.L.R. 428; 145 A.L.R. 1416; 118 A.L.R. 602; 48 L. ed. 860; 65 L. ed. 138.

In *Counselman* v. *Hitchcock*, the United States Supreme Court decreed the unconstitutionality of the original Interstate Commerce Act of February 4, 1887, 49 U.S.C.A., § 1, which contained a provision on immunity of witness, inasmuch as although the same prevented the use of evidence against them, it did not prevent their prosecution as a result of the information obtained from his testimony. The court stated that only absolute immunity could justify the fact of compelling a witness to testify when he claimed his privilege against self incrimination.

In *Brown* v. *Walker*, it was held that the immunity granted by the Act of Congress of February 11, 1893, 49 U.S.C.A., § 46—Interstate Commerce Act—to persons who testified or produced evidence before said Commission in obedience to subpoena, sufficiently satisfied the constitutional guaranty of the Fifth Amendment. Said statute was approved by Congress as a consequence of the decision in *Counselman* v. *Hitchcock*, which decreed, as we have seen, the unconstitutionality of the immunity clause contained in the

original Interstate Commerce Act, that is, the one approved on February 4, 1887, 49 U.S.C.A., § 1. Explaining the purpose and scope of the immunity granted by the Act of 1893, the constitutionality of which it upheld, the court stated the following:

"It is entirely true that the statute does not purport, nor is it possible for any statute, to shield the witness from the personal disgrace or opprobrium attaching to the exposure of his crime; but, as we have already observed, the authorities are numerous and very nearly uniform to the effect that, if the proposed testimony is material to the issue on trial, the fact that the testimony may tend to degrade the witness in public estimation does not exempt him from the duty of disclosure. A person who commits a criminal act is bound to contemplate the consequences of exposure to his good name and reputation, and ought not to call upon the courts to protect that which he has himself esteemed to be of such little value. The safety and welfare of an entire community should not be put into the scale against the reputation of a self-confessed criminal, who ought not, either in justice or in good morals, to refuse to disclose that which may be of great public utility, in order that his neighbors may think well of him. The design of the constitutional privilege is not to aid the witness in vindicating his character, but to protect him against being compelled to furnish evidence to convict him of a criminal charge. If he secure legal immunity from prosecution, the possible impairment of his good name is a penalty which it is reasonable he should be compelled to pay for the common good. If it be once conceded that the fact that his testimony may tend to bring the witness into disrepute, though not to incriminate him does not entitle him to the privilege of silence, it necessarily follows that if it also tends to incriminate, but at the same time operates as a pardon for the offense, the fact that the disgrace remains no more entitles him to immunity in this case than in the other."

In *Heike* v. *United States, supra,* the court held that the immunity granted by the Sherman Act of 1903, 15 U.S.C.A., § 32, as amended in 1906, 15 U.S.C.A., § 33, protected the witnesses in the same manner provided by the Fifth Amendment; that the Fifth Amendment did not justify the claim-

ing of a privilege against prosecution for offenses remotely connected with the testimony given, and that, consequently, the immunity granted by the Sherman Act should be equally regarded as not protecting them. The court speaking through Justice Holmes, stated the following, upon rejecting the theory that the immunity clause of the Act of February 14, 1903 was one of amnesty:

"Of course there is a clear distinction between an amnesty and the constitutional protection of *a party* from being compelled in a criminal case to be a witness against himself. Amendment 5. But the obvious purpose of the statute is to make evidence available and compulsory that otherwise could not be got. We see no reason for supposing that the act offered a gratuity to crime. It should be construed, so far as *its words fairly allow the construction*, as coterminous with what otherwise would have been the privilege of the person concerned. We believe its policy to be the same as that of the earlier act of February 11, 1893, chap. 83, 27 Stat. at L. 443, 49 U.S.C.A. § 46, which read: 'No person shall be excused from attending and testifying,' etc. 'But no person shall be prosecuted,' etc., as now, thus showing the correlation between constitutional right and immunity by the form.". (Italics ours.)

In *United States* v. *Monia, supra,* the question was whether a person who in obedience to a subpoena appears before a grand jury inquiring into an alleged violation of the Sherman Act and gives testimony under oath substantially touching the alleged offense, obtains immunity from prosecution of that offense, pursuant to the terms of the Sherman Act, although he does not claim the privilege against self incrimination. The Supreme Court stated the following:

"The legislation involved [Sherman Act] in the instant case is plain in its terms and, on its face, means to the layman that if he is subpoenaed, and sworn, and testifies, he is to have immunity. Instead of being a trap for the Government, as was the original Act [the Sherman Act of 1903] the statutes in question, if interpreted as the Government now desires, may well be a trap for the witness. Congress evidently intended to

afford Government officials the choice of subpoenaing a witness and putting him under oath, with the knowledge that he would have complete immunity from prosecution respecting any matter substantially connected with the transactions in respect of which he testified, or retaining the right to prosecute by foregoing the opportunity to examine him. That Congress did not intend, or by the statutes in issue provide, that, in addition, the witness must claim his privilege, seems clear. It is not for us to add to the legislation what Congress pretermitted."

The Sherman Act insofar as pertinent, originally provided as approved in 1903, 15 U.S.C.A. § 32: ". . . no person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under said Acts [the Interstate Commerce Act, the Sherman Anti-trust Act, and other Acts]; Provided, further, that no person so testifying shall be exempt from prosecution or punishment for perjury committed in so testifying."

On June 30, 1906 the following was added to the foregoing provision: "Under the immunity provisions [of the aforesaid Act and others], immunity shall extend only to a natural person who, in obedience to a subpoena, gives testimony under oath or produces evidence, documentary or otherwise, under oath." 15 U.S.C.A. § 33. This addition to the Sherman Act in 1906 was the result of a decision of the District Court for the North District Court of Illinois in *United States* v. *Armour & Co.*, 142 Fed. 808, in the sense that a voluntary appearance—and the furnishing of testimony and documentary evidence without being subpoenaed—produced the effect of granting immunity against prosecutions under the Sherman Act, inasmuch as the immunity granted by this Act was broader than the privilege given by the Fifth Amendment. Congress approved the amendment of June 30, 1906 having in mind that, if the construction given to the statute by the aforesaid Court prevailed, then any per-

son could at his choice obtain immunity from prosecution by volunteering information to the investigating bodies.

## III

### *Purpose and Scope of Act No. 13 of April 9, 1941*

 We shall examine now, in the light of the rules set forth, the problem involved herein.

Act No. 13 approved on April 9, 1941, by virtue of which —according to defendant—he obtained immunity, provides in its §§ 1 and 2 the following:

"Section 1.—No person shall be prosecuted, punished, or have his property confiscated for testifying or for offering any kind of evidence in a criminal proceeding, process, or investigation, and such immunity shall cover the declarant not only concerning the testimony given by him in regard to the crime being investigated, but also concerning any liability he may have incurred in regard to other crimes; and every person shall be obliged to appear or to testify before a prosecuting attorney, municipal judge, or justice of the peace when said officials summon him as a witness in an investigation being made by them; *Provided,* That refusal to appear or to testify shall constitute contempt which shall be punished by the district court of the judicial district where the summons was issued, or where the witness refuses to testify, on complaint filed in said court by the officer in charge of the investigation, in a summary proceeding in which the defendant shall have two days to answer said complaint, making such allegations as he may deem pertinent. The hearing shall be held within the five (5) days following the answer of the defendant.

"Section 2.—This Act shall not be construed in the sense of obliging a person to testify against himself in any criminal case, and shall apply only to natural persons."

In *People* v. *Quiñones*, 69 P.R.R. 682, we stated that this Act took root from an opinion rendered on November 1, 1939 by the late Justice Angel R. de Jesús acting as judge in vacation, in a mandamus proceeding brought to this Court by the People of Puerto Rico against the late Domingo Sepúlveda, judge of the District Court of Ponce at the time. The

facts which gave rise to said petition of mandamus were the following: In the course of an investigation the prosecuting attorney of the District Court summoned a witness to testify in his presence. The witness refused to do so on the ground that her testimony would incriminate her. The prosecuting attorney then moved the District Court of Ponce to summon the witness to appear in that court and answer some questions that the district attorney wished to ask, and in default thereof to show cause why she should not be punished for contempt. The summons was issued, the witness appeared but refused to answer the questions put to her by the district attorney. The latter then asked the judge to tell the witness that she would not be prosecuted with respect to the investigation that he was carrying on and that therefore she should answer his question. The judge refused to do so on the ground that §§ 239 and 241 of the Code of Criminal Procedure [6] were inapplicable to an investigation carried on by the prosecuting attorney, inasmuch as the criminal prosecution had not yet commenced, and therefore it lacked jurisdiction to grant the immunity sought. In dismissing the petition for mandamus the judge in vacation recommended to the Legislative Assembly the approval of an immunity law stating the following:

"A statutory enactment, to be valid, must not only state that the testimony will not be used against the witness. It must guarantee that no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify or produce evidence. See the Act of Congress of February 25, 1903 (15 U.S.C.A. § 32) rendered sufficient in *Brown* v. *Walker*, 161 U. S. 591, 40 L. ed. 819.

---

[6] Said Sections provide:

"Section 239.—When two or more persons are included in the same charge, the court may, at any time before the defendants have gone into their defense, on the application of the prosecuting attorney, direct any defendant to be discharged, that he may be a witness for the people."

"Section 241.—The order mentioned in the two preceding sections is an acquittal of the defendant discharged, and is a bar to another prosecution for the same offense."

"In our opinion it is necessary that a statute similar to the last one cited be adopted by our Legislative Assembly, *thereby preventing that in many instances the privilege against self-incrimination may become an unsurmountable barrier for the discovery and punishment of the offense.*" (Italics ours.)

In the afore-cited case of *People* v. *Quiñones*, as an answer to the argument that where a codefendant calls on a defendant, by virtue of § § 239 and 241 of the Code of Criminal Procedure and of Act No. 13, *supra*, to testify in a trial the latter should be compelled to testify even if his testimony is self-incriminating, we stated the following: "None of these sections [239 and 241 of the Code of Criminal Procedure and 43 of the Penal Code] aimed to grant immunity to a defendant called to testify for a codefendant. Nor is such the aim pursued by the aforesaid Act No. 13. This immunity is granted *to witnesses for the prosecution and to those called by the district attorney, Municipal Judge or Justice of the Peace to testify in an investigation carried on by one of said officers.*" (Italics ours.)

The situation which the Legislative Assembly of Puerto Rico intended to remedy by the approval of Act No. 13, was undoubtedly, the one set forth in his opinion by the judge in vacation and which gave rise to the afore-cited mandamus proceeding: to furnish a means to compel a witness summoned in a proceeding, prosecution or investigation, to give testimony against a defendant, granting said witness, in return for his testimony, absolute immunity if the testimony should incriminate him. That it was not the legislative intent to include a person who had been previously accused or against whom a prosecution had been commenced—a criminal prosecution commences with defendant's arrest—the immunity granted to any other person who might have been summoned as "witness", pursuant to the terms of § 1, is evident. The Legislature expressly provided, by § 2, that said Act No. 13 "shall not be construed in the sense of obliging

a person to testify against himself in any criminal case."
In other words, it made clear its purpose that the aforesaid
Act was not to be regarded as a substitute for all the per-
sons entitled to invoke the privilege against self incrimina-
tion—among which there are evidently, but not exclusively,
those persons accused of an offense—but only for those who
were summoned as *witnesses*, in any proceeding, prosecution
or investigation. As to the defendants or persons under pros-
ecution, Act No. 13 did not remove the privilege against self
incrimination. This Act has remained in full force, and the
former cannot be *compelled* to give testimony. As to the
*witnesses* summoned in proceedings, prosecutions or inves-
tigations the privilege has been removed through the guar-
anty of immunity established in its § 1, which is absolute
and, therefore, coextensive with the privilege of which they
are deprived.

In the case at bar, Batalla was under arrest. A prose-
cution had commenced against him. He was protected by
the constitutional guaranty—paragraph 3, § 2, Organic
Act—of not being compellable to give incriminating testi-
mony. If his right was violated and an involuntary con-
fession was obtained from him—therefore inadmissible in
evidence—through coercion, threats or promise of immunity,
see 7 A.L.R. 419, is not a question which we can consider
at this stage, in view of the development of the proceedings
in the court *a quo* and the nature of this petition. But, evi-
dently, Act No. 13 did not grant him, as defendant, immu-
nity from prosecution because he testified before the prose-
cuting attorney. He was not then a mere witness who is
the one whom said Act compels to give testimony and there-
fore, to whom it grants immunity. And the prosecuting at-
torney could not promise him immuntiy, not only because of
his condition as defendant, but also because Act No. 13 does
not authorize, nor does it require, any promise of immunity
on the part of the prosecuting attorney,[7] inasmuch as the

---

[7] The granting of immunity is considered an eminently legislative
function. *Doyle* v. *Hofstader*, 257 N. Y. 244, 177 N. E. 489, 87 A.L.R.

act operates automatically and the immunity protects the witness who has been summoned as soon as he testifies under oath without need to claim the privilege against self incrimination. *United States* v. *Monia, supra.* Contra: *State* v. *Davidson*, 242 Wis. 406, 8 N. W. 2d 275. See also the Annotation in 145 A.L.R. 1496.

Whether Batalla, as he contends, is entitled under Act No. 13 to be exonerated from criminal liability because the prosecuting attorneys used his testimony in the habeas corpus proceeding filed by the codefendants Palóu and Castro in order to establish a probable cause against the latter, or whether he is entitled to such exoneration under said Act and under §§ 239 and 241 of the Code of Criminal Procedure are questions which, in this proceeding and at this stage, we cannot and should not determine now.

## IV

### *Pleas In Bar*

Under our adjective criminal law,[8] the respondent judge did not err in holding that petitioner could not raise, by way of a special plea in bar, his right to immunity. Said right, if it exists, can only be raised as a defense, within his plea of not guilty. *Rebstock* v. *Superior Court* (Cal., 1905), 80 Pac. 65,[9] since, as it has been held in *Brown* v. *Walker* and *Heike* v. *United States, supra*, the immunity clause of the Sherman Act offers "protection against a successful accusation, available to defendant as a defense, and not immunity against the accusation itself," and that when this defense is improperly dismissed, it may lead to the reversal of the judgment against defendant.

---

417. As to the faculty of district attorneys in general, to promise immunity, and the different forms and circumstances in which the latter may favor the witnesses, see 13 A.L.R. 2d 1439.

[8] Sections 151, 162, 163, 165, 166 and 167 of the Code of Criminal Procedure.

[9] Contra: *Scribner* v. *State* (Okla., 1913), 132 Pac. 933.

"The legal protection of the witness against prosecution for crime disclosed by him is, in law, equivalent to his legal innocence of the crime disclosed. . . The witness, regarded in law as innocent if prosecuted for a crime which he has been compelled by the statute to disclose, will stand as well as other innocent persons; and. . . not. . . any better." *State* v. *Nowell*, 58 N. H. 314.

## V

### *The Plea of Guilty and the Refusal to Permit its Withdrawal*

 In stating the proceedings followed in these cases in the court *a quo*, we copied the motion whereby Batalla, after attempting to establish his defense of immunity, by way of a special plea in bar, requested to be declared guilty of the offenses alleged in all the informations filed against him. If this last plea is a valid plea of guilty, it would preclude his raising either on appeal or by way of certiorari, any defense except directed to attack the sufficiency of the informations on the ground that the facts charged do not constitute an offense, and the jurisdiction of the court, for all other defenses would be considered waived. *Weir* v. *United States*, 92 F. 2d 634; *Kachnic* v. *United States*, 53 F. 2d 312; *Spirow* v. *United States*, 24 F. 2d 796; *People* v. *Brown*, 140 Cal. App. 616. If on the other hand, said plea is not a valid plea of guilty, then it should not have been accepted by the trial judge, and once accepted it was an error not to allow its withdrawal. Let us see.

From the motion itself requesting that he be convicted on all counts, it appears not only that petitioner's sole aim was to appeal to this Court—for the obvious purpose of assigning as error the refusal of the court to examine and decide, after hearing the corresponding evidence before the trial, the question related to his alleged immunity—but he

also insisted in his right to be exonerated on all counts by the immunity claimed. He invoked in said motion, among other things, the judicial knowledge of the court as to the fact that his testimony had been used by the District Attorney in the habeas corpus proceeding against codefendants Palóu and Castro, explaining at the same time why he admitted "the facts alleged in all the informations" and requested to be convicted thereof, upon averring that "the defense of immunity presupposes the admission by defendant of the facts denounced."

The aforesaid motion is not—and cannot be—a sufficient plea of guilty to justify Batalla's convictions. The facts stated therein allowed no margin to render said motion susceptible to interpretations of whether or not it was a voluntary confession of guilty [10] which had to be investigated on that score [11] by the trial judge. In said motion, notwithstanding his admission of having committed the criminal acts charged against him, Batalla insisted in his right to be exonerated from criminal liability on all counts against him, by virtue of the immunity which he repeatedly and throughout all the incidents of the case, claimed. The exoneration of a person by virtue of the right of immunity is not predicated on the fact that no criminal act was committed, but rather on the fact that, despite the commission of said act, he shall not be criminally liable therefor. Hence, in the case at bar, Batalla's admission—although voluntarily made—of the facts alleged in the information, does not operate as a valid plea of guilty when, coetaneously with said admission, the right to an absolute exoneration is claimed.[12]

---

[10] Once said motion was read to the court by Batalla's counsel, the judge examined defendant extensively on the "spontaneity" of his confession of guilty, being convinced that the same was made voluntarily.

[11] When examined by the court, defendant then personally accepted having committed the acts charged in the informations.

[12] Batalla insisted in his right to be exonerated by virtue of the immunity claimed, even after his petition for the withdrawal of the plea of guilty had been denied.

Under those conditions it cannot be affirmed that Batalla's intention or purpose in the trials prosecuted against him, was to admit criminal liability with a view to suffering the legal consequences of said admission. Indeed, although he admitted the commission of the criminal act, he denied all liability before the law, on the ground of his alleged immunity. And this, far from constituting a confession of guilty, in strict law, is an absolute denial of criminal liability.

On the other hand, there is absolutely nothing in the record to show that Batalla, in admitting the facts alleged in the informations—denying, at the same time, liability by virtue of the immunity which he claimed and insisting in his right to be exonerated—considered his admission as a waiver of said alleged right. *Lowe* v. *State*, 73 Atl. 637 (Md., 1909).

Under such conditions we must hold that Batalla's plea was not, in law, a valid plea of guilty and that the same should not have been admitted by the court *a quo*. *Lowe* v. *State, supra; People* v. *Ross*, 100 N. E. 2d 923. *Cf. Parker* v. *Johnston*, 29 F. Supp. 829. But once admitted, however, if Batalla requested at that stage of the proceeding to be allowed to withdraw said plea, the court should have used its discretion in favor of said petition, independently of the reasonings or grounds supporting it, especially when in the motion to that effect, Batalla insisted in that his plea of "guilty" as a matter of law, was one of "not guilty" by virtue of the defense of immunity on which said motion rested. Failure to do so is an error which renders the judgment void. *Lowe* v. *State, supra.* See also, 110 A.L.R. 228; 66 A.L.R. 628; 20 A.L.R. 1145 and 6 A.L.R. 694.

In view of the foregoing, the judgments appealed from are set aside and the cases remanded to the court *a quo* for further proceedings consistent with this opinion.

Mr. Justice Ortiz did not participate herein.